LARY ALAN RAPPAPORT (State Bar No. 087614)
  lrappaport@proskauer.com
PROSKAUER ROSE LLP
2049 Century Park East, Suite 3200
Los Angeles, CA 90067-3206
Telephone: 310.557.2900
Facsimile: 310.557.2193

Attorneys for Defendant
ALLSAINTS USA LIMITED

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIRANDA VAROZ, on behalf of herself and all others similarly situated,<br><br>    Plaintiff,<br><br>  vs.<br><br>ALLSAINTS USA LIMITED, a foreign business corporation, doing business in California as ALLSAINTS SPITALFIELDS USA RETAIL LTD, and DOES 1 through 50 inclusive,<br><br>    Defendants. | Case No.   '16 CV2597 MMA AGS<br><br>**DEFENDANT ALLSAINTS USA LIMITED'S NOTICE OF REMOVAL OF ACTION**<br><br>[Federal Question; Class Action Fairness Act of 2005]<br><br>(San Diego Superior Court Case No. 37-2016-00032584-CU-MC-CTL) |

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA, AND TO PLAINTIFF AND HER ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendant AllSaints USA Limited, d/b/a AllSaints Spitalfields USA Retail LTD ("Defendant"), the defendant in the above-referenced action, which was originally commenced in the Superior Court of the State of California in and for the County of San Diego (San Diego Superior Court Case No. 37-2016-00032584-CU-MC-CTL), hereby invokes the removal jurisdiction of the United States District Court for the Southern District of California, pursuant to 28 U.S.C. §§ 1441 and 1446, asserting federal question jurisdiction under 28 U.S.C. § 1331 and jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1453, 1711 – 1715.   The grounds for removal are more fully set forth below:

## STATEMENT OF THE CASE

1.     On September 19, 2016, Miranda Varoz ("Plaintiff") filed a class action complaint ("Complaint" or "Compl.") alleging that Defendant violated the Fair and Accurate Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.*, as amended ("FCRA"), by printing more than the last five (5) digits of Plaintiff's VISA payment card number on the electronically-printed receipt she received in relation to her $76.90 purchase at an AllSaints retail store in San Diego, California on August 2, 2016.  (Compl. ¶ 13.) Plaintiff also purports to bring her claim on behalf of a putative nationwide class of "thousands" of others similarly situated.  (Compl. ¶ 49.)   Defendant denies any liability to Plaintiff or any member of the putative class she purports to represent.

2.     Plaintiff seeks to certify a nationwide class of "[a]ll consumers who, within the applicable statute of limitations, made a purchase with a payment card at any AllSaints retail location in the United States and were provided a transaction

receipt at the point-of-sale that displayed more than the last five (5) digits of the card's account number."  (Compl. ¶ 47.)

3.     Plaintiff, on behalf of herself and the alleged class, seeks "statutory damages in an amount of 'not less than $100 and not more than $1000' for each violation," as well as attorneys' fees, costs, and punitive damages.  (Compl., Prayer for Relief.)

4.     Plaintiff served a copy of the Complaint upon Defendant on September 23, 2016.

## THE REQUIREMENTS FOR REMOVAL UNDER 28 U.S.C. § 1331 ARE SATISFIED

5.     This Court has original jurisdiction over this action under 28 U.S.C. § 1331 because it is founded on a claim or right "arising under the Constitution, laws, or treaties of the United States."  A defendant may remove an action to federal court under 28 U.S.C. § 1441 if the complaint presents a federal question, such as a federal claim.  See *Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 560 (1968).

6.     The Complaint asserts a single claim against Defendant – violation of 15 U.S.C. § 1681c(g).  (Compl., ¶¶ 56-65.)  As such, the action is founded on a claim or right "arising under the Constitution, laws, or treaties of the United States," so removal pursuant to Section 1441 is proper.

## THE REQUIREMENTS FOR REMOVAL UNDER CAFA ARE SATISFIED

7.     CAFA was enacted "to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co. v. Owens,* 135 S. Ct. 537, 554 (2014).   As the Supreme Court recently has held, there is no presumption against removal and the statute's provisions "should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant."  *Id.* (internal quotation and citation omitted).

8.     With respect to a defendant's burden in seeking to remove a case to federal court, defendant's notice of removal need only include "a short and plain

statement of the grounds for removal." *Dart,* 135 S. Ct. at 553. "Congress . . . intended to simplify the pleading requirements for removal and to clarify that courts should apply the same liberal rules to removal allegations that are applied to other matters of pleading." *Id.* (internal quotation omitted). In determining whether the requirements of removal have been satisfied, this Court may also rely upon the allegations of Plaintiff's Complaint, taken as true for purposes of removal. *See, e.g., Muniz v. Pilot Travel Ctrs. LLC,* No. Civ. S-07-0325, 2007 WL 1302504, at \*10 (E.D. Cal. Apr. 30, 2007) (court must accept as true plaintiff's allegations as pled in complaint and assume plaintiff will prove liability and recover damages alleged); *Levine v. BIC USA, Inc.*, No. 07cv1096, 2007 WL 2406897 at \*16-17 (E.D. Cal. Aug. 20, 2007) (applying allegation in complaint that amount in controversy does not exceed $74,999.99 as to each putative class member in determining that $5 million jurisdictional threshold under CAFA was satisfied); *Korn v. Ralph Lauren Corp.*, 536 F.Supp.2d 1199, 1203 (E.D. Cal. 2008) (plaintiff is bound by allegation in complaint concerning defendant's citizenship for diversity purposes); *see also Lewis v. Verizon Communs., Inc.*, 627 F.3d 395, 399 ("In determining the amount [in controversy], we first look to the complaint.").[1]

    **A.**   **Timeliness**

    9.    Plaintiff's complaint was filed on September 19, 2016 and served upon Defendant on September 23, 2016. Defendant filed this notice within thirty days of receipt of the Complaint, and thus it is filed timely pursuant to 28 U.S.C. § 1446(b).

    **B.**   **Venue**

    10.    This action was originally brought in the Superior Court of California for the County of San Diego, a place which is "embraced by" the United States District

---

[1] The courts in these cases, in determining whether CAFA's requirements for removal were satisfied, also relied upon affidavits or declarations submitted by defendants in support of their notice of removal. Subsequent to these decisions, however, the Supreme Court made clear that a defendant need *not* submit evidentiary support for removal with its notice. *Dart Cherokee,* 135 S. Ct. at 554.

Court for the Southern District of California.  28 U.S.C. § 84(d).  Accordingly, federal statute requires that this action be removed to this district for venue purposes.  28 U.S.C. §§ 1441, 1446(a).

**C.  Putative Class Action**

11.    The term "class action" is defined under the statute as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action."  28 U.S.C. § 1332(d)(1)(B).  Plaintiff styles her Complaint as a class action.  She purports to bring it "on behalf of herself and all others similarly situated," alleging a nationwide class.  Although Defendant disputes that Plaintiff can meet the requirements under Federal Rule of Civil Procedure 23 for certifying the alleged class of unnamed plaintiffs, and disputes any amount owing to Plaintiff or the alleged class, this lawsuit qualifies as a "class action" under CAFA.

**D.  Minimal Diversity Exists**

12.    Removal is proper where at least one class member is diverse from at least one defendant.  28 U.S.C. § 1332(d).  As alleged in the Complaint, Plaintiff Miranda Varoz is a citizen of the State of California.  (Compl., ¶ 13.)

13.    The Complaint alleges that Defendant is, and was at the time the action was filed, a foreign corporation organized and existing under the laws of England with its principal place of business in London, United Kingdom. (Compl., ¶ 14.)

14.    Although Plaintiff purports to assert her claims against numerous "Doe" defendants, the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. § 1332.  *Fristos v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join removal petition).  Thus, the existence of Doe defendants one through 50, inclusive, named in Plaintiff's complaint does not deprive this Court of jurisdiction.

### E.  **Amount in Controversy**

15.  The claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000.  28 U.S.C. § 1332(d)(6).  The Supreme Court recently held that where, as here, a plaintiff's complaint does not explicitly specify the amount in controversy, a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold under CAFA.  *Dart Cherokee*, 135 S. Ct. at 554.  Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)."  Senate Judiciary Committee Report, S. REP. 109-14, at 49 (2005).  The amount-in-controversy allegation in a defendant's notice of removal should be accepted as true when not contested by a plaintiff or questioned by the court.  *Dart Cherokee*, 135 S. Ct. at 553.  If a court is uncertain about whether all matters in controversy meet the $5 million jurisdictional threshold under CAFA, "the court should err in favor of exercising jurisdiction over the case."  *Kearns v. Ford Motor Co.*, No. CV 05-5644, 2005 WL 3967998, at *6 (C.D. Cal. Nov. 21, 2005) (citing S. REP. 109-14, at 49).

16.  Although Defendant disputes that Plaintiff and the putative class are entitled to any recovery and denies any liability to Plaintiff or any member of the class she purports to represent, Plaintiff's allegations place at issue in this action an amount that meets CAFA's $5 million jurisdictional threshold.

17.  Plaintiff seeks statutory damages of up to $1,000 per each of these thousands of putative class members, in addition to punitive damages and Plaintiff's costs and attorney's fees.  Accordingly, on the basis of the class-wide statutory damages Plaintiff seeks, and despite defendant's denial of liability, the "aggregated" claims of the class members place the amount in controversy "plausibly" in excess of

$5 million.  *See* 28 U.S.C. § 1332(d)(6) (putative class member claims "aggregated" to determine whether amount in controversy exceeds $5 million).

18.    Plaintiff's allegations, therefore, although denied by Defendant, place at issue in this case the purchases from all of Defendant's 51 stores located in the United States. (Compl., ¶ 5.), which would exceed $5,000,000.[2]

19.    In addition, Plaintiff seeks attorneys' fees which must be taken into account in ascertaining the amount in controversy, though Defendant denies that Plaintiff is entitled to such fees or costs.  *Galt G/S v. JSs Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorney's fees to be included in amount in controversy regardless of whether award is discretionary or mandatory).

20.    Finally, although Defendant denies that it owes Plaintiff, or any member of the alleged class, any relief, let alone punitive damages, in determining the amount in controversy, the Court must assume that the allegations of the complaint are true and that Plaintiff will ultimately prevail on all claims made in the complaint.  *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp.2d 993, 1001 (C.D.Cal. 2002); *see also Scherer v. Equitable Life Assurance Society of the United States,* 347 F.3d 394, 399 (2d Cir. 2003) (when determining the amount in controversy, it is the amount put in controversy by the plaintiff's complaint, not what ultimately may be provable).  Accordingly, Plaintiff's claims for relief unquestionably place more than $5 million at issue in this action.

F.    <u>Number of Members of Putative Class</u>

21.    Although Defendant contends that Plaintiff's class allegations lack merit, the class pled by Plaintiff exceeds 100 members.  The Complaint alleges that the class consists of "thousands of customers." (Compl. ¶ 49.)  Accordingly, CAFA's requirement under 28 U.S.C. § 1332(d)(5)(B) that the proposed class include at least

---

[2] If the 51 locations alleged by Plaintiff (Compl. ¶7) each allegedly issued 100 non-compliant receipts, that would plausibly constitute alleged damages of over $5 million (51x100x1000), exclusive of costs, fees and punitive damages.

100 persons is satisfied in this action.

      **G.**     **<u>Notice to the Clerk of the State Court and to Adverse Parties, Submission of</u>**
**<u>Process, Pleadings and Orders on File in State Court</u>**

      22.     Copies of this Notice of Removal promptly will be served on counsel of record for Plaintiff and filed in the Clerk of the Superior Court of the State of California in and for the County of San Diego as required under 28 U.S.C. § 1446(d). In compliance with 28 U.S.C. § 1446(a), true and correct copies of pleadings, process, and orders served or filed in this action are attached as Exhibit A.

      WHEREFORE, without waiving any objections to improper service, jurisdiction, or venue, or any defenses or objections to this action, Defendant requests that the above action pending before the Superior Court of the State of California for the County of San Diego be removed to the United States District Court for the Southern District of California.

Dated:  October  19, 2016     PROSKAUER ROSE LLP


                         By:    s/ Lary Alan Rappaport
                                 Lary Alan Rappaport

                        Attorneys for Defendant
                        ALLSAINTS USA LIMITED
                        E-mail: lrappaport@proskauer.com

DEFENDANT ALLSAINTS USA LIMITED NOTICE OF REMOVAL

62222869v1

# EXHIBIT A

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

(Please see attachment)

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Miranda Varoz, on behalf of herself and all others similarly situated

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**09/20/2016** at 12:32:00 PM

Clerk of the Superior Court
By Jacqueline J. Walters,Deputy Clerk

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* Central | CASE NUMBER: *(Número del Caso):* |
|---|---|
| 330 West Broadway San Diego, CA. 92101 | 37-2016-00032584-CU-MC-CTL |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado, o del demandante que no tiene abogado, es):*

Todd D Carpenter (CA #234464), 402 W. Broadway, 29th Floor, San Diego, CA. 92101

| DATE: September 20, 2016 *(Fecha)* | Clerk, by *(Secretario)* J. Walters | , Deputy *(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)      ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use Judicial Council of California SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465 *www.courtinfo.ca.gov* |
|---|---|---|

Exhibit A
Page 1

**SUM-200(A)**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Varoz v. AllSaints USA Limited, et al. | 37-2016-00032584-CU-MC-CTL |

### INSTRUCTIONS FOR USE

➔ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
➔ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff   ☑ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

ALLSAINTS USA LIMITED, a foreign business corporation, doing business in California as ALL SAINTS SPITAFIELDS USA RETAIL LTD, and DOES 1 through 50 inclusive

Page ___2___ of ___2___

**Page 1 of 1**

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

1   **CARLSON LYNCH SWEET**
2   **KILPELA & CARPENTER, LLP**
    Todd D. Carpenter (CA 234464)
3   402 W Broadway, 29th Floor
    San Diego, California 92101
4   Telephone: 619.756.6994
    Facsimile: 619.756.6991
5   tcarpenter@carlsonlynch.com

6   Edwin J. Kilpela
7   1133 Penn Avenue, 5th Floor
    Pittsburgh, Pennsylvania 15222
8   Telephone: 412.322.9243
    Facsimile: 412.231.0246
9   ekilpela@carlsonlynch.com

10   *Counsel for Plaintiff*

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego
**09/19/2016** at 10:26:51 AM
Clerk of the Superior Court
By Patrick Gonzaga, Deputy Clerk

**IN THE SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF SAN DIEGO**

MIRANDA VAROZ, on behalf of herself and all others similarly situated,

        Plaintiff,

    v.

ALLSAINTS USA LIMITED, a foreign business corporation, doing business in California as ALLSAINTS SPITALFIELDS USA RETAIL LTD, and DOES 1 through 50 inclusive.,

        Defendant.

Case No.: 37-2016-00032584-CU-MC-CTL

**CLASS ACTION**

**[E-FILE]**

**COMPLAINT FOR VIOLATIONS OF THE FAIR AND ACCURATE CREDIT TRANSACTION ACT; 15 U.S.C. § 1681c(g)**

**DEMAND FOR JURY TRIAL**

    Plaintiff MIRANDA VAROZ ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant ALLSAINTS USA LIMITED and states:

**<u>NATURE OF ACTION</u>**

    1.    Congress amended the Fair Credit Reporting Act ("FRCA") in 2003 through the passage of the Fair and Accurate Credit Transactions Act ("FACTA"). FACTA was enacted to curb identity theft and fraud by requiring businesses and merchants who accept debit and credit cards (collectively,

1    "payment cards") for the purchase of merchandise to truncate the expiration date and all but the last five

2    (5) digits of the payment card number from all payment card receipts electronically printed during the

3    transaction. (See 15 U.S.C. § 1681c(g)(1).)

4        2.        Congress enacted FACTA with the intent of helping to prevent the possibility of thieves

5    stealing the identity of another by obtaining one's payment card number and the expiration date of the

6    payment card. Businesses generally require one's payment card number and the expiration date of that

7    payment card to transact business. Access to both the card number and the expiration date of the card

8    makes it easier for thief to commit identity theft.

9        3.        This truncation requirement was specifically intended to protect consumers from the likes

10    of dumpster divers and other would-be perpetrators of identity theft and credit card fraud by making it

11    more difficult to obtain discarded receipts that contain a card owner's entire card number and/or

12    expiration date.

13        4.        The truncation of the expiration date of the payment card prevents would-be identify

14    thieves from obtaining one piece of a card holders' full payment card profile, which includes: the

15    consumer's name, address, payment card number, expiration date, and/or the security pin.

16        5.        Defendant AllSaints USA Limited, doing business in California as AllSaints Spitalfields

17    USA Retail Limited, ("AllSaints"), is an international fashion retailer that sells contemporary branded

18    womenswear, menswear, footwear, and accessories throughout the world. AllSaints operates over 130

19    stores worldwide, 51 of which are located in the United States. In May 2011, Lion Capital LLP ("Lion

20    Capital"), an international investor of consumer brands, acquired a majority interest in AllSaints. Since

21    Lion Capital's ownership, AllSaints has experienced hundreds of millions of dollars in annual revenue.

22        6.        Despite being a sophisticated merchant, who routinely and in the course and scope of its

23    normal business practice accepts both debit and credit cards for the purchase and sale of merchandise,

24    AllSaints fails to comply with FACTA in that it does not truncate the digits of the payment card on the

25    electronically printed receipts it provides to customers at the point of sale.

26        7.        As alleged more fully herein, AllSaints is aware of the truncation requirements

27    proscribed by 15 U.S.C. § 1681c(g)(1), but willfully disregards them by printing ten (10) digits of its

28    customers' payment cards on the customers' electronically printed payment card receipts at the point-of-

sale in each of its retail establishments throughout the country—this is *double* the amount of digits allowable to be electronically printed by statute.

9.     A "willful" violation of FACTA, 15 U.S.C. § 1681c(g)(1), imposes mandatory statutory damages for each violation.  The minimum amount of damages is $100.00 per violation up to a maximum of $1,000.00 per violation. (15 U.S.C. § 1681n(a)(1)(A).)

## JURISDICTION AND VENUE

10.     Plaintiff is informed and believes that AllSaints' principal place of business is in London, England.  AllSaints is registered with the California Secretary of State and operates approximately seventeen (17) retail stores throughout California.  AllSaints has accepted credit and debit cards for the transaction of business throughout California, including the County of San Diego, which has caused both obligations and liability of AllSaints to arise in the County of San Diego.

11.     This Court has jurisdiction over AllSaints and the claims set forth below pursuant to Code of Civil Procedure § 410.10 and the California Constitution, Article VI § 10, because this case is a cause not given by statute to other trial courts.

12.     The amount in controversy exceeds the jurisdictional minimum of this Court.

## PARTIES

13.     Plaintiff Miranda Varoz resides in San Diego County, California.  On approximately August 2, 2016, Plaintiff made a purchase with a Visa payment card at an AllSaints retail store in the Fashion Valley Mall, located at 7007 Friars Road, San Diego, California 92108.  Plaintiff purchased a pair off "Off White Biker/Off White Jeans" for $76.90, inclusive of tax.  After handing the AllSaints cashier the jeans at the cash register, the jeans were scanned and the cashier requested payment from Plaintiff.  Plaintiff presented her Visa payment card and the cashier completed the purchase transaction. Plaintiff received her copy of the merchandise receipt.  The receipt contained, among other things, the first six (6) digits and the last four (4) digits of Plaintiff's Visa payment card number.  Plaintiff's payment card number was not properly truncated in accordance with 15 U.S.C. § 1681c(g)(1) because only six (6) of the sixteen (16) digits of Plaintiff's payment card number were crossed out.  As a result, the transaction receipt revealed ten (10) of Plaintiff's Visa payment card number—twice the amount of

1  payment card number digits permissible under 15 U.S.C. § 1681c(g)(1).  (*See* Exhibit A, Plaintiff's

2  Transaction Receipt.)

3      14.    Defendant AllSaints is a foreign business corporation, organized and existing under the

4  laws of England, with its principal place of business located at Units C15-C17, Jacks Place, 6 Corbet

5  Place, London, E1 6NN, United Kingdom.  AllSaints is authorized to conduct business in California as

6  AllSaints Spitalfields USA Retail LTD and is registered with the California Secretary of State with an

7  address at 750 N San Vicente Blvd., Suite 1050 East, West Hollywood, California 90069.  AllSaints is a

8  profitable contemporary fashion retailer of menswear, womenswear, footwear, and accessories and

9  operates over fifty (50) retail stores in the United States.  AllSaints is a sophisticated merchant which

10  also generates sales through its website and routinely accepts credit and debit cards for the payment of

11  clothing and other apparel.

## FACTUAL ALLEGATIONS

### History of FCRA and FACTA

15.    The FCRA was passed in 1970 in part "to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." (Fair Credit Reporting Act (FCRA), 15 U.S.C.§§ 1681–1681x (2006).)  However, as identity theft increasingly affected U.S. consumers through the early 1990s, critics of FCRA were concerned that FCRA did very little, if anything, to prevent identify theft from occurring.

16.    The Fair and Accurate Credit Transactions Act of 2003 ("FACTA") was enacted in part to address the security practices of merchants who accept payment cards (credit and debit).  FACTA targets a very narrow problem; the publication of credit card numbers and expiration dates on electronically printed (not handwritten) credit card and debit card receipts.  Congress amended the Fair Credit Reporting Act ("FCRA") in 2003 through passage of the Fair and Accurate Credit Transactions Act ("FACTA"), which focuses on curbing identity theft and credit card fraud.  Several provisions within FACTA are specifically intended to combat identity theft and empower consumers to better monitor their credit and financial situations.  (*See FTC Issues Final Rules On FACTA Identity Theft Definitions, Active Duty Alert Duration, And Appropriate Proof of Identity* (Oct. 29, 2004) Federal

1   Trade Commission <https://www.ftc.gov/news-events/press-releases/2004/10/ftc-issues-final-rules-

2   facta-identity-theft-definitions-active> (as of Aug. 8, 2016).)

3       17.    FACTA included provisions that permitted consumers to acquire one free credit report on

4   an annual basis from each of the three major credit reporting agencies, Equifax, Experian, and

5   TransUnion.  FACTA also established "fraud alerts," which permit customers to "flag" their credit files

6   if they feel they are at risk of identity theft.  (*See generally,* 15 U.S.C. § 1681c-1-2.)

7       18.    Most importantly, FACTA mandated the truncation of vital account information on credit

8   and debit card receipts.

9       19.    Section 1681c(g)(1) of the FCRA—enacted as part of FACTA—requires businesses to

10  mask credit and debit card numbers and suppress the printing of card expiration dates on electronically

11  printed consumer receipts as follows:

12

13      (1)   In general.  Except as otherwise provided in this subsection, no person that
              accepts credit cards or debit cards for the transaction of business shall print **more

14            than the last 5 digits of the card number** or the expiration date upon any receipt
              provided to the cardholder at the point of the sale or transaction.

15

16      (2)   Limitation.  This subsection shall **apply only to receipts that are electronically
              printed,** and shall not apply to transactions in which the sole means of recording

17            a credit card or debit card account number is by handwriting or by an imprint or
              copy of the card.

18  (15 U.S.C. § 1681c(g)(1)-(2) (emphasis added).)

19      20.    Any person who ***willfully*** fails to comply with any requirement imposed under this

20  subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of:

21

22      (a)(1)(A) any actual damages sustained by the consumer as a result of the failure or
              damages of ***not less than $100 and not more than $1,000***; or

23      (B) in the case of liability of a natural person for obtaining a consumer report under false
              pretenses or knowingly without a permissible purpose, actual damages sustained by the

24            consumer as a result of the failure or $1,000, whichever is greater;

25      (a)(2) such amount of punitive damages as the court may allow; and

26

27      (a)(3) in the case of any successful action to enforce any liability under this section, the
              costs of the action together with reasonable attorney's fees as determined by the court.

28

---

PLAINTIFF'S CLASS ACTION COMPLAINT

5

1  (15 U.S.C. § 1681n (emphasis added).)

2       21.     A private right of action exists under 15 U.S.C. § 1681c(g)[1].

3  **The Risks of Identity Theft FACTA Helps to Prevent**

4       22.     The FTC estimates that as many as 11.7 million people had their identity stolen between

5  2006 and 2008.  The FTC recognizes that identity theft can be perpetrated through techniques such as

6  "dumpster diving" or by using "spyware."  (*Identity Theft and Data Security*, Federal Trade Commission

7  <https://www.ftc.gov/news-events/media-resources/identity-theft-and-data-security> (as of Aug. 8,

8  2016).)

9       23.     The act of "dumpster diving" occurs when perpetrators sift through dumpsters and trash

10  bins outside businesses and residences to look for documents and discarded receipts that can divulge a

11  variety of personal information, such as phone numbers, social security numbers, financial account

12  numbers, and credit card numbers.  A popular method of carrying out credit card fraud by this method

13  occurs when the perpetrator finds a discarded pre-approved credit card offer along with the information

14  necessary to activate the card in the victim's name.  Victims often do not think twice about throwing

15  away these types of pre-approved offers, as well as bills, credit card statements, and bank statements.

16  (Fitterer, *Putting a Lid on Online Dumpster-Diving: Why the Fair and Accurate Credit Transactions Act*

17  *Should Be Amended to Include E-mail Receipts* (2011) 9 NW. J. TECH. & INTELL. PROP. 591, 596.)

18       24.     Perpetrators of identity theft can readily assemble the pieces of a customers' payment

19  card profile (including the payment card number and expiration date), using among other things: 1)

20  discarded receipts which contain the expiration dates of payment cards; 2) discarded debit card bank

21

22

23

24  _____

25  [1] Every court to consider whether a private right of action exists under the section at issue here, 15
U.S.C. § 1681c(g), has decided that it does.  (*See, e.g.*, *Arcilla v. Adidas Promotional Retail Operations,*
26  *Inc.* (C.D. Cal. 2007) 488 F. Supp. 2d 965, 969; *Leowardy v. Oakley, Inc.* (C.D. Cal. April 10, 2007)
SACV 07-53 CJC, 2007 U.S. Dist. LEXIS 31229 (in chambers) (denying motion to dismiss § 1681 c(g)
27  based upon alleged lack of private right of action); *Eskandari v. IKEA U.S., Inc.,* (C.D. Cal. March 12,
2007) No. SACV 06-1248 JVS, 2007 U.S. Dist. LEXIS 23007, 2007 WL 845948, *2; *Aeschbacher v.*
28  *Cal. Pizza Kitchen,* (C.D. Cal. Apr. 3, 2007) No. CV 07-215 VBF, 2007 U.S. Dist. LEXIS 34852.)

1    account credit card account statements; or 3) other personal documents which contain references to the

2    payment card number.

3        25.    Once assembled, identity thieves are able to make "Card-Absent" purchases over the

4    phone or through direct mail with only a limited amount of information from the victim related to their

5    payment card profile, including minimal personal identification information, a payment card number,

6    and expiration date.

7        26.    For example, despite the fact many businesses and merchants require the full credit card

8    number and expiration date of a debit or credit card to complete purchases, several merchants do not

9    require the security code[2].

10       27.    Unlike in situations where the payment card is present at the point-of-sale, "Card-

11   Absent" transactions present identity thieves with a multitude of opportunities to exploit their ill-gotten

12   bounties by making illicit purchases.  The growth of the mail order, telephone order (MO/TO), and

13   Internet merchant channels means increasing the number of merchants who are now processing

14   transactions in situations where the card and the cardholder are not present—and fraud may be

15   especially difficult to detect.  (*See* Exhibit B, Visa, Card Acceptance Guidelines for Visa Merchants

16   (2015) Card-Absent Transactions, p. 41.)  Credit card providers, including Visa, instruct their merchants

17   to collect from customers, at a minimum, the card account number, the customers' name, the card

18   expiration date, and cardholders' statement address. (*Id.* at p. 42.)  Absent from these minimal

19   requirements is requesting the security code generally located on the back of the card.[3]

20   ────────────────

21   [2] "Security code, in this context, refers to an additional code, found today on most major credit cards,

22   which is often required to make a card-not-present (e.g. online, over-the-phone) purchase.  Different
     credit card issuers refer to it through a host of remarkably similar acronyms and names, such as Card

23   Verification Value (CVV), Card Verification Code (CVC or CVC2), Card Code Verification (CCV),
     *etc.*  This additional security measure helps to combat credit card fraud in cases where the perpetrator

24   has only the card owner's name, credit card number, and expiration date off a receipt, as the security

25   code is not usually printed on receipts.  However . . . a variety of fraud methods are able to procure this
     code, so it is by no means a perfect safeguard."  (Fitterer, *Putting a Lid on Online Dumpster-Diving:*

26   *Why the Fair and Accurate Credit Transactions Act Should Be Amended to Include E-mail Receipts*
     (2011) 9 NW. J. TECH. & INTELL. PROP. 591, 596.)

27   [3] Visa suggests requesting the security code as a fraud prevention procedure, if available. However, only
     in certain markets is the CVV2 (security code) required to be present for all card-absent transactions.

28   (*Id.* pp.42-43.)

─────────────────────────────────────
PLAINTIFF'S CLASS ACTION COMPLAINT
7

28.     In 2006, the FTC commissioned the 2006 Identity Theft Survey Report.  As a result of this report, the FTC estimated that although 50% of identity theft victims do not incur "out-of-pocket" expenses, victims of all types of identity theft spent hours of their time resolving the various problems that result from identity theft, and some victims incurred substantial out-of-pocket expenses, including lost wages, legal fees, payment of fraudulent debts, and miscellaneous expenses such as notarization, copying, and postage.  (Synovate, *2006 Identity Theft Survey Report* (Nov. 2007) Federal Trade Commission, 6 <https://www.ftc.gov/sites/default/files/documents/reports/federal-trade-commission-2006-identity-theft-survey-report-prepared-commission-synovate/synovatereport.pdf> (as of Aug. 9 2016).)

**The Implementation of FACTA and the Effect of the "Clarification Act"**

29.     FACTA was enacted as part the Fair Credit Reporting Act on December 4, 2003. Congress provided that it would take effect in two phases.  With respect to cash registers installed on or after January 1, 2005, compliance was required immediately, while registers in use before that date were required to become compliant beginning on December 4, 2006.  (15 U.S.C. § 1681c(g)(3).)  The truncation requirement was phased in over time to allow large and small businesses to conform to the requirements and update the cash registers and/or Payment Card Industry terminals in service.  Shortly after FACTA took effect in December of 2006, hundreds of class action lawsuits were filed in federal courts alleging violations of §1681c(g).

30.     In 2008, almost five years after the passage of FACTA, Congress enacted the "Credit and Debit Card Receipt Clarification Act" ("Clarification Act").  The Clarification Act was in direct response to the "hundreds of lawsuits" that were filed against merchants after the effective date of FACTA, alleging that merchants' "failure to remove the expiration date was a willful violation" of the statute, even though the account number was properly truncated.  (Credit and Debit Card Receipt Clarification Act of 2007, Pub.L. No. 110-241, § 2(a)(4) (June 3, 2008) 122 Stat. 1565.)  Congress found that many merchants mistakenly believed that § 1681c(g) would be satisfied solely by truncating the card number and not the expiration date.  (*Ibid.* at § 2(a)(3) (emphasis added).)

31.     The Clarification Act provided merchants and businesses a one-time safe harbor from FACTA compliance by allowing them additional time to come into compliance with the truncation requirement for payment card expiration dates.  The new statute added a subsection (d) that amended FACTA to state that any merchant who printed an expiration date, but otherwise complied with FACTA, between the dates of December 4, 2004 and June 3, 2008, shall not be deemed in willful noncompliance with §1681c(g).  (15 U.S.C. § 1681n(d).)  The Clarification Act essentially moved the effective compliance date from December of 2006 to June 3, 2008.

32.     Importantly, the Clarification Act did not remove or in any way alter the mandate of 15 U.S.C. § 1681c(g)(1), requiring all businesses and merchants to truncate the customer's payment card expiration date on all electronically printed receipts made at the point-of-sale and it did not excuse any violations on a going-forward basis.  Specifically, the quoted subsection (d) language applied only to a "person who printed an expiration date on any receipt provided to a consumer cardholder at a point-of-sale or transaction between December 4, 2004, and June 2008," the date of the enactment of this subsection.  (15 U.S.C. § 1681n(d).)  Thus, the printing of a payment card's expiration date *after* June 3, 2008 is a violation.

33.     Critically, Congress did not amend the substantive provision of FACTA so that printing both five digits of the card number and the expiration date would be expressly compliant.  It merely said doing so prior to June 3, 2008 would not be "willful noncompliance."  This limitation demonstrates such conduct after June 3, 2008 could be "willful noncompliance."

**AllSaints' Willful Violation of FACTA's Truncation Requirement (15 U.S.C. § 1681c(g)(1))**

34.     Statutory damages under section 1681n depend on a violation being "willful[4]."  Where "willfulness" is a statutory condition of civil liability, it generally covers not only knowing violations of

---

[4] The Supreme Court defined "willful," as that term is used in §1681n, in *Safeco Ins. Co. v. Burr*, (2007) 551 U.S. 47, 69, concluding that a practice is willful when "the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless."  The standard set forth in the Supreme Court's decision in *Safeco Insurance*, which held that willful violations of the Fair Credit Reporting Act (FCRA) are assessed for reckless disregard, applies to all violations of the FCRA

1    a standard, but reckless ones as well. (*Safeco Ins. Co. v. Burr* (2007) 551 U.S. 47, 56-57.)  An action is

2    "willful" when the action is not only a violation under a reasonable reading of the statute's terms, but

3    also when the action shows that the company ran a risk of violating the law substantially greater than the

4    risk associated with a reading that was merely careless. (*Ibid.* at p. 69.)  A willful violation can be

5    reckless, i.e. "something more than negligence but less than knowledge of the law's requirements."

6    (*Murray v. New Cingular Wireless Services, Inc.* (7th Cir. 2008) 523 F.3d 719, *citing Safeco Ins. Co. v.*

7    *Burr* (2007) 551 U.S. 47).)

8         35.    AllSaints was aware of the truncation requirements mandated by FACTA (15 U.S.C. §

9    1681c(g)(1)).  In fact, it was AllSaints' routine custom and business practice to truncate the payment

10   card's expiration date from the payment card receipt at the point of sale, thereby complying with one

11   part of FACTA's truncation requirements.

12        36.    Despite its knowledge or effort to comply with FACTA, AllSaints willfully violated

13   Plaintiff and putative Class members' rights to receive payment card receipts with the payment card

14   digits properly truncated to display no more than the last five (5) digits of the card number.  AllSaints

15   violated Section 1681c(g)(1) by failing to truncate eleven (11) of the sixteen (16) payment card digits of

16   Plaintiff's payment card and those of the proposed Class.  No objective reading of the statute would lead

17   AllSaints to conclude that it is permissible to electronically print more than the last five (5) digits of its

18   customers' payment card numbers on their receipts at the point of sale.

19        37.    Ignorance of the requirements will not excuse AllSaints' liability, especially in light of its

20   partial or half-hearted compliance.  Further, several pertinent sources were either provided to AllSaints

21   or readily available to it which would have instructed the same with respect to the truncation of the card

22   payment card number.

23

24

25

26

27

28   (including FACTA).  (*Cortez v. Trans Union, LLC* (3rd Cir. 2010) 617 F.3d 688, 721, fn. 39; abrogating
     *Perez v. Trans Union, LLC* (3rd Cir. 2010) 526 F.Supp.2d 504.)

38.     AllSaints currently accepts payment cards from various major card brands at its retail locations, including Visa, Mastercard, American Express, etc.[5]  As a result, AllSaints is a "Visa Merchant" by virtue of accepting Visa branded credit and debit cards as tender for merchandise.  The Visa "Card Acceptance Guidelines for Visa Merchants © 2015" instructs its merchants to:

> **Ensure that the Visa account number is suppressed in accordance with Visa Rules and local laws and regulations.**  Effective 1 October 2014, Visa requires the account number be partly suppressed on the receipt; however, rules will vary by region.
>
> The expiration date should not appear at all on the cardholder copy of the transaction receipt.  Existing point-of-sale terminals must comply with these requirements.  To ensure that your point-of-sale terminals are properly set up for account number and expiration date suppression, contact your acquirer.

(*See* Exhibit B, Visa, Card Acceptance Guidelines for Visa Merchants (2015) Getting Down to Basics, p. 12.)

Specifically, Visa mandates that its merchants, in all transactions, provide transaction receipts with all digits of the account number, except for the final four (4) digits, to be suppressed or disguised on the customer's copy of the transaction receipt.  (Visa, *Visa Core Rules and Visa Product and Service Rules* (April 15, 2015) <https://usa.visa.com/dam/VCOM/download/about-visa/15-April-2015-Visa-Rules-Public.pdf> at PSR-358.)  Mastercard and American Express similarly require their merchants to agree to truncation and suppression requirements for customers' payment card numbers and expiration dates.[6]

39.     Further, the FTC publishes a set of guidelines for businesses to assist them in protecting the personal information of consumers.  (*See* Exhibit C, *Protecting Personal Information: A Guide for*

---

[5] AllSaints, FAQs: What Payment Methods Do You Accept? <http://www.allsaints.com/new-faqs/> ("We currently accept the following payment methods: Visa, Mastercard, American Express, Solo, Delta, Maestro, Paypal, Amazon Payments and the AllSaints Gift Card.)
[6] (*See* Mastercard, *Transaction Processing Rules* (June 9, 2016) <https://www.mastercard.us/content/dam/mccom/en-us/documents/rules/transaction-processing-rules-june-2016.pdf> at p. 92); American Express, *American Express Merchant Operating Guide – United States, including Puerto Rico & U.S. Virgin Islands* (April 2016) < https://icm.aexp-static.com/Internet/NGMS/US_en/Images/MerchantPolicyOptBlue.pdf > at 22.)

*Business* (November 2011) <https://www.ftc.gov/system/files/documents/plain-language/bus69-protecting-personal-information-guide-business_0.pdf>.) These guidelines instruct:

> The law requires you to shorten—or truncate—the electronically printed credit and debit card receipts you give your customers. You may include no more than the last five digits of the card number, and you must delete the expiration date.

(*Ibid.* at p. 7.)

40.   AllSaints' violations occurred and continue to occur to this day, more than eight (8) years following the effective date (June 3, 2008) of the "Clarification Act."

41.   Upon information and belief and investigation, AllSaints is violating FACTA in multiple store locations and in multiple states.

42.   Visa, Mastercard, American Express, and other credit companies and vendors of credit and debit card processing machines inform retailers, such as AllSaints, of FACTA's requirements.

43.   AllSaints' competitors and business peers are compliant with the requirements of FACTA.

44.   Despite its sophistication as a profitable, high-end fashion retailer, its knowledge of the requirements, its attempts to comply with the requirements, and its contractual partners' mandates that it follow the requirements, AllSaints remains willfully noncompliant with FACTA's payment card number truncation requirements.

45.   Further, despite the law's initial enactment in 2003, it did not go into effect until December 2006 and then the compliance deadline for truncation requirements was extended by the Clarification Act until June 2008. (15 U.S.C. §§ 1681c(g)(3), 1681n(d).) Yet, more than thirteen (13) years following its initial enactment, AllSaints remains noncompliant. AllSaints systematically and routinely violates this law by continuing to electronically print more than the last five (5) digits of its customers' payment card numbers on all payment card receipts generated as a result of purchases made in its retail stores. Its interpretation of section 1681c(g)(1)—which resulted in removing expiration dates, but not truncating payment card numbers—is objectively unreasonable.

46.      As a result, Plaintiff and the putative Class have been damaged in that AllSaints has deprived Plaintiff and putative Class members of a statutory right mandated by FACTA to receive receipts, which have properly truncated their payment card information.  As a result of AllSaints' willful violation of the statute, Plaintiff and putative Class members are entitled to statutory damages in the amount of $100.00 to $1,000.00 per violation, punitive damages and attorneys' fees.

## CLASS ALLEGATIONS

47.      Plaintiff brings this action pursuant to California Code of Civil Procedure Section 382 on behalf of herself and a class of similarly situated individuals ("Class") defined as follows:

### Nationwide Class

All consumers who, within the applicable statute of limitations, made a purchase with a payment card at any AllSaints retail location in the United States and were provided a transaction receipt at the point-of-sale that displayed more than the last five (5) digits of the card's account number.

48.      Excluded from the Class definition is AllSaints and its officers, directors, employees, parents, subsidiaries, and affiliates; any Judge or Magistrate presiding over the action and members of their families; and Plaintiff's and Defendant's Counsel.

49.      ***Numerosity***.  The members of the Class are so numerous that joinder of all members of the Class is impracticable.  Plaintiff is informed and believes that the proposed Class contains thousands of customers who made a payment card purchase at a AllSaints retail store and received an electronically printed receipt that displayed more than the last five (5) digits of the payment card's account number; and were thereby damaged by AllSaints' conduct as alleged herein. The precise number of Class members is unknown to Plaintiff.

50.      ***Existence and Predominance of Common Questions of Law and Fact***.  This action involves common questions of law and fact, which predominate over any questions affecting individual Class members.  These common legal and factual questions include, but are not limited to, the following:

a)   Whether AllSaints electronically prints customers' receipts at the point of sale without truncating all but the last five (5) digits of their payment card account numbers;

b)   Whether the alleged conduct violates FACTA, 15 U.S.C. § 1681 *et seq.*;

---

PLAINTIFF'S CLASS ACTION COMPLAINT

13

1    c)  Whether AllSaints' conduct was willful;

2    d)  Whether Plaintiff and the Class members are entitled to statutory damages, punitive

3    damages, costs and/or other appropriate remedies, including attorneys' fees.

4    51.   ***Typicality.***  Plaintiff's claims are typical of the claims of the members of the Class

5    because, *inter alia*, all Class members had their rights violated through the uniform misconduct

6    described above, were subject to AllSaints' violations of FACTA in the same manner and under

7    identical circumstances (receiving an electronically printed receipt following the purchase of

8    merchandise with a payment card at an AllSaints' retail store).  Plaintiff is advancing the same claims

9    and legal theories on behalf of herself and all members of the Class.

10   52.   ***Adequacy of Representation.***  Plaintiff will fairly and adequately protect the interests of

11   the members of the Class.  Plaintiff has retained counsel experienced in complex consumer class action

12   litigation, and Plaintiff intends to prosecute this action vigorously.  Plaintiff has no adverse or

13   antagonistic interests to those of the Class.

14   53.   ***Superiority.***  A class action is superior to all other available means for the fair and

15   efficient adjudication of this controversy.  The damages or other financial detriment suffered by

16   individual Class members is relatively small compared to the burden and expense that would be entailed

17   by individual litigation of its claims against AllSaints.  It would thus be virtually impossible for the

18   Class, on an individual basis, to obtain effective redress for the wrongs done to them.  Furthermore, even

19   if Class members could afford such individualized litigation, the court system could not.  Individualized

20   litigation would create the danger of inconsistent or contradictory judgments arising from the same set

21   of facts.  Individualized litigation would also increase the delay and expense to all parties and the court

22   system from the issues raised by this action.  By contrast, the class action device provides the benefits of

23   adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision

24   by a single court, and presents no unusual management difficulties under the circumstances here.

25   54.   Unless a class is certified, the Class will not be fully compensated from AllSaints'

26   statutory violation(s) and will undoubtedly continue to engage in the illegal conduct.

27   55.   To the extent that any total award of statutory damages on a class-wide basis might be

28   adjudicated as violating the Defendant's Due Process Rights under the United States Constitution,

---

PLAINTIFF'S CLASS ACTION COMPLAINT

14

1  Plaintiff, on behalf of the putative Class, expressly requests only those damages fully allowable under

2  the Constitution.

### COUNT I
### Violation of the Fair and Accurate Credit Transaction Act ("FACTA")
### 15 U.S.C. § 1681c(g)

5  56.    Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if

6  fully set forth herein.

7  57.    Plaintiff brings this claim individually and on behalf of the Class.

8  58.    15 U.S.C. § 1681c(g)(1) requires businesses to truncate credit and debit card numbers and

9  suppress the printing of credit card and debit card expiration dates on electronically printed customer

10  receipts at the point of sale as follows:

11  . . . [N]o person that accepts credit cards or debit cards for the transaction of business
12  shall print more than the last 5 digits of the card number or the expiration date upon any
    receipt provided to the cardholder at the point of the sale or transaction.

13

14  59.    AllSaints continuously and systematically fails to comply with the requirements imposed

15  on it by 15 U.S.C. § 1681c(g)(1) in the manner described herein.

16  60.    AllSaints transacts business in the United States and accepts credit cards and/or debit

17  cards for payment of merchandise at its retail stores in the United States.

18  61.    In transacting business, AllSaints employs electronic cash registers, computers, and/or

19  other machines that permit it to uniformly process credit card and debit card payments and transactions.

20  At all times during the class period, its machines which process sales and payment card transactions at

21  the point-of-sale electronically printed the Class members' receipts without properly truncating their

22  payment card account numbers.  At all times during the class period, AllSaints was electronically

23  printing its customers' payment card receipts at the point-of-sale with more than the last five (5) digits

24  of the payment card's account number in violation of 15 U.S.C. § 1681c(g)(1).

25  62.    On August 2, 2016, Plaintiff engaged in a debit card purchase at an AllSaints retail store

26  located in the Fashion Valley mall in San Diego, California.  Upon the conclusion of her transaction at

27  the point-of-sale, AllSaints electronically printed her receipt which contained, among other things, ten

28  (10) of the sixteen (16) digits of Plaintiff's debit card account number.  Specifically, AllSaints

---

PLAINTIFF'S CLASS ACTION COMPLAINT
15

1    electronically printed the first six (6) digits and the last (4) digits of Plaintiff's debit card account

2    number, i.e. 123456******1234. (*See* Exhibit A, Plaintiff's Transaction Receipt.)

3        63.     As described herein, and at all times during the class period, AllSaints' actions with

4    respect to the electronic printing of credit card and debit card receipts without properly truncating the

5    payment card's account number was a willful violation of 15 U.S.C. § 1681c(g)(1).

6        64.     As described herein, despite repeated notice of FACTA's requirements, its apparent

7    knowledge of the requirements, and its attempts to comply with FACTA's requirements, AllSaints

8    willfully violated FACTA in conscious disregard of the rights of Plaintiff and the members of the Class,

9    thereby exposing Plaintiff and the members of the Class to an increased risk of identity theft and/or

10   payment card fraud.

11       65.     As a result of AllSaints' willful violations of FACTA, AllSaints is liable to Plaintiff and

12   each member of the Class in the statutory damage amount of "not less than $100 and not more than

13   $1000" for each violation. (15 U.S.C. § 1681n(a)(1)(A).) Plaintiff and the members of the Class are

14   entitled to recover costs of suit and their reasonable attorneys' fees. (15 U.S.C. § 1681n(a)(3).)

15   Additionally, Plaintiff and the members of the Class are entitled to recover punitive damages. (15

16   U.S.C. § 1681n(a)(2).)

17                                    **PRAYER FOR RELIEF**

18   Wherefore, Plaintiff prays for a judgment:

19

20   A.      Certifying the Class as requested herein;

21   B.      Awarding Plaintiff and the proposed Class members statutory damages in an amount of

22           "not less than $100 and not more than $1000" for each violation;

23   C.      Awarding Plaintiff and the proposed Class members only an amount of damages

24           permissible under the United States Constitution, in accordance with due process;

25   D.      Awarding attorneys' fees and costs;

26   E.      Awarding punitive damages according to proof; and

27   F.      Providing such further relief as may be just and proper.

28

---

PLAINTIFF'S CLASS ACTION COMPLAINT
16

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial of her claims by jury to the extent authorized by the law.

Dated:  September 9, 2016

**CARLSON LYNCH SWEET**
**KILPELA & CARPENTER, LLP**

By: _____

Todd D. Carpenter (CA 234464)
402 W Broadway, 29th Floor
San Diego, California 92101
Telephone:  619-756-6994
tcarpenter@carlsonlynch.com

PLAINTIFF'S CLASS ACTION COMPLAINT
17

# EXHIBIT A

# ALLSAINTS

**All Saints Retail Limited**
**San Diego**
Unit #305
7007 Friars Road
San Diego
CA 92108
www.allsaints.com

VAT Reg. No. 128793

| | |
|---|---|
| Date | Aug 02 2016 11:33 |
| Assistant | Tom |
| Receipt No | 010818 |
| Till No | 002 |

|  |  | $ |
|---|---|---|
| 113651 | M20 | 71.20 |
| | Tax : | 5.70 |
| Off White BIKER/OFF WHITE Jeans | | |

| | | |
|---|---|---|
| | Goods Total : | 71.20 |
| | Tax : | 5.70 |
| | **Sale Total :** | **76.90** |
| Visa Card | VIC | 76.90 |
| ████ *****5316 | | |
| | **Payment Total :** | **76.90** |

We hope you are happy with your purchase.
However, should you need to return it, we offer a
full refund or exchange on purchases made
instore within 14 days. You can also exchange
holiday gifts up to the 8th January
Your statutory rights are not affected

Join us on Facebook
**www.facebook.com/allsaints**

**Share your #AllSaintsExperience on Twitter**

8511200108189

# EXHIBIT B



Card Acceptance Guidelines
for Visa Merchants

VISA

Exhibit A
Page 23

Section 1: Getting Down to Basics

## Tips

US
In the U.S. for restaurant, taxicab, limousine, bar, tavern, beauty/barber shop, and health/ beauty spa merchant transactions with a Visa credit or debit card, may receive tips from their customers. They must never estimate the tip, but must follow Visa procedures. Cardholders now have the ability to check their credit or checking accounts almost instantaneously via phone, the Internet, or an ATM. An authorization that includes an estimated tip can reduce a cardholder's available funds or credit by an unrecognizable or unexpected amount. This kind of transaction may occur if a cardholder leaves a cash tip or adds a tip that is less than the estimated amount used for authorization. This practice applies to magnetic-stripe and chip transactions.

In some restaurant environments, if tip is not known when the authorization occurs, the merchant must authorize only the known amount, but may clear for up to 20 percent greater than the authorized amount. If the tip is greater than 20 percent, the merchant may obtain a second authorization.



Restaurant, taxicab, limousine, bar, tavern, beauty/barber shop, and health/beauty spa authorizations are valid for the transaction amount plus or minus 20 percent to protect merchants from chargeback liability for failure to obtain proper authorization.

Restaurants are permitted and protected from chargeback for failure to obtain proper authorization if they clear for an amount up to 20 percent more than they authorized, and the same is true up to 15 percent additional for hotel, car rental, and cruise line merchants. For car rental, this threshold is the greater of 15 percent or $75.00.

For further information on tips authorization, contact your acquirer.

## No Cash Refunds

**Complete a Visa credit receipt for merchandise returns or adjustments. Do not provide cash refunds for returned merchandise originally purchased with a Visa card.** For the most part, Visa does not permit cash refunds for any credit or debit card transaction. By issuing credits, you protect your customers from individuals who might fraudulently make a purchase on their Visa account and then return the merchandise for cash.

If a transaction was conducted with a Visa prepaid card and the cardholder is returning items but has discarded this card, you may give a cash refund or in-store credit.

## Deposit Time Limits

**Deposit your Visa transaction receipt as specified by your acquirer.** There are deadlines by which an acquirer must process the transaction.

## Suppressed Account Number and Expiration Date

**Ensure that the Visa account number is suppressed in accordance with Visa Rules and local laws and regulations.** Effective 1 October 2014, Visa requires the account number be partly suppressed on the receipt; however, rules will vary by region.

The expiration date should not appear at all on the cardholder copy of the transaction receipt. Existing point-of-sale terminals must comply with these requirements. To ensure that your point-of-sale terminals are properly set up for account number and expiration date suppression, contact your acquirer.

Card Acceptance Guidelines for Visa Merchants
Visa. © 2015 Visa. All Rights Reserved.

Exhibit A
Page 24

SECTION 3

# Card-Absent Transactions



**What's Covered**

- General Card-Absent Transaction Procedures
- Fraud Prevention Guidelines for Card-Absent Transactions
- Additional Fraud Prevention Tools for the Internet
- Suspicious Transactions
- Recurring Transactions
- Split-shipment Transactions

## Industry Changes

Consumers are turning to digital devices to initiate purchases leading to explosive year-over-year growth in eCommerce. Online purchases provide greater flexibility for consumers to shop. The data analytics allow consumers to compare products, features and pricing, and in some cases have instant or same day product delivery. This level of convenience is becoming more mainstream migrating consumers from traditional brick and mortar retail. Merchants are finding themselves in more situations where the card and cardholder are not present, and fraud may be especially difficult to detect transactions, so as to reduce unnecessary friction and disputes.

This section covers basic card acceptance procedures for both MO/TO and eCommerce merchants. It also includes resources and best practices that all card-absent merchants can use to help prevent fraud and chargebacks.

Exhibit A
Page 25

# EXHIBIT C



*Protecting* **PERSONAL INFORMATION**
A Guide for Business

**FEDERAL TRADE COMMISSION**



# PROTECTING PERSONAL INFORMATION
## A Guide for Business

Most companies keep sensitive personal information in their files—names, Social Security numbers, credit card, or other account data—that identifies customers or employees.

This information often is necessary to fill orders, meet payroll, or perform other necessary business functions. However, if sensitive data falls into the wrong hands, it can lead to fraud, identity theft, or similar harms. Given the cost of a security breach—losing your customers' trust and perhaps even defending yourself against a lawsuit—safeguarding personal information is just plain good business.

Some businesses may have the expertise in-house to implement an appropriate plan. Others may find it helpful to hire a contractor. Regardless of the size—or nature—of your business, the principles in this brochure will go a long way toward helping you keep data secure.

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, NW
Washington, DC 20580
1-877-FTC-HELP (1-877-382-4357)
business.ftc.gov/privacy-and-security



**2. SCALE DOWN.** Keep only what you need for your business.

If you don't have a legitimate business need for sensitive personally identifying information, don't keep it. In fact, don't even collect it. If you have a legitimate business need for the information, keep it only as long as it's necessary.

▪ Use Social Security numbers only for required and lawful purposes—like reporting employee taxes. Don't use Social Security numbers unnecessarily—for example, as an employee or customer identification number, or because you've always done it.

### SECURITY CHECK

**Question:**
We like to have accurate information about our customers, so we usually create a permanent file about all aspects of their transactions, including the information we collect from the magnetic stripe on their credit cards. Could this put their information at risk?

**Answer:**
**Yes.** Keep sensitive data in your system only as long as you have a business reason to have it. Once that business need is over, properly dispose of it. If it's not in your system, it can't be stolen by hackers.

▪ The law requires you to shorten—or truncate—the electronically printed credit and debit card receipts you give your customers. You may include no more than the last five digits of the card number, and you must delete the expiration date.

▪ Don't keep customer credit card information unless you have a business need for it. For example, don't retain the account number and expiration date unless you have an essential business need to do so. Keeping this information—or keeping it longer than necessary—raises the risk that the information could be used to commit fraud or identity theft.

▪ Check the default settings on your software that reads customers' credit card numbers and processes the transactions. Sometimes it's preset to keep information permanently. Change the default setting to make sure you're not keeping information you don't need.

▪ If you must keep information for business reasons or to comply with the law, develop a written records retention policy to identify what information must be kept, how to secure it, how long to keep it, and how to dispose of it securely when you no longer need it.




SCALE DOWN.
2

7

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Carlson Lynch Sweet Kilpela & Carpenter LLP<br>Todd Carpenter (SBN 234464)<br>402 W. Broadway, 29th Floor<br>San Diego, CA 92101<br>TELEPHONE NO.: 619-756-6994   FAX NO.: 619-756-6991<br>ATTORNEY FOR *(Name)*: Plaintiff Miranda Varoz | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego<br><br>**09/19/2016** at 10:26:51 AM<br>Clerk of the Superior Court<br>By Patrick Gonzaga, Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  San Diego
STREET ADDRESS: 330 West Broadway
MAILING ADDRESS: 330 West Broadway
CITY AND ZIP CODE: San Diego 92101
BRANCH NAME: Central

CASE NAME:
Miranda Varoz v. AllSaints USA Limited, et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | 37-2016-00032584-CU-MC-CTL |
|---|---|---|
| [✓] Unlimited  [ ] Limited<br>(Amount          (Amount<br>demanded      demanded is<br>exceeds $25,000)  $25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE: Judge Richard E. L. Strauss<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[✓] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [✓] is   [ ] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [✓] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [✓] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. [✓] monetary   b. [ ] nonmonetary; declaratory or injunctive relief   c. [✓] punitive
4. Number of causes of action *(specify)*: 1
5. This case [✓] is   [ ] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: September 9, 2016
Todd Carpenter
_____
(TYPE OR PRINT NAME)                              (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |



**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

**ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION**

CASE NUMBER: 37-2016-00032584-CU-MC-CTL     CASE TITLE: Varoz vs Allsaints USA Limited [E-FILE]

<u>**NOTICE:**</u> **All plaintiffs/cross-complainants in a general civil case are required to serve a copy of the following three forms on each defendant/cross-defendant, together with the complaint/cross-complaint:**
        **(1) this Alternative Dispute Resolution (ADR) Information form (SDSC form #CIV-730),**
        **(2) the Stipulation to Use Alternative Dispute Resolution (ADR) form (SDSC form #CIV-359),** <u>***and***</u>
        **(3) the Notice of Case Assignment form (SDSC form #CIV-721).**

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts, community organizations, and private providers offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. The San Diego Superior Court expects that litigants will utilize some form of ADR as a mechanism for case settlement before trial, and it may be beneficial to do this early in the case.

Below is some information about the potential advantages and disadvantages of ADR, the most common types of ADR, and how to find a local ADR program or neutral. A form for agreeing to use ADR is attached (SDSC form #CIV-359).

<u>**Potential Advantages and Disadvantages of ADR**</u>
ADR may have a variety of advantages or disadvantages over a trial, depending on the type of ADR process used and the particular case:

| **Potential Advantages** | **Potential Disadvantages** |
|---|---|
| • Saves time | • May take more time and money if ADR does not resolve the dispute |
| • Saves money | |
| • Gives parties more control over the dispute resolution process and outcome | • Procedures to learn about the other side's case (discovery), jury trial, appeal, and other court protections may be limited or unavailable |
| • Preserves or improves relationships | |

<u>**Most Common Types of ADR**</u>
You can read more information about these ADR processes and watch videos that demonstrate them on the court's ADR webpage at http://www.sdcourt.ca.gov/adr.

**Mediation:**  A neutral person called a "mediator" helps the parties communicate in an effective and constructive manner so they can try to settle their dispute. The mediator does not decide the outcome, but helps the parties to do so. Mediation is usually confidential, and may be particularly useful when parties want or need to have an ongoing relationship, such as in disputes between family members, neighbors, co-workers, or business partners, or when parties want to discuss non-legal concerns or creative resolutions that could not be ordered at a trial.

**Settlement Conference:**  A judge or another neutral person called a "settlement officer" helps the parties to understand the strengths and weaknesses of their case and to discuss settlement. The judge or settlement officer does not make a decision in the case but helps the parties to negotiate a settlement. Settlement conferences may be particularly helpful when the parties have very different ideas about the likely outcome of a trial and would like an experienced neutral to help guide them toward a resolution.

**Arbitration:**  A neutral person called an "arbitrator" considers arguments and evidence presented by each side and then decides the outcome of the dispute.  Arbitration is less formal than a trial, and the rules of evidence are usually relaxed. If the parties agree to binding arbitration, they waive their right to a trial and agree to accept the arbitrator's decision as final. With nonbinding arbitration, any party may reject the arbitrator's decision and request a trial. Arbitration may be appropriate when the parties want another person to decide the outcome of their dispute but would like to avoid the formality, time, and expense of a trial.

**Other ADR Processes:**  There are several other types of ADR which are not offered through the court but which may be obtained privately, including neutral evaluation, conciliation, fact finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR processes. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute. Be sure to learn about the rules of any ADR program and the qualifications of any neutral you are considering, and about their fees.

**Local ADR Programs for Civil Cases**

**Mediation:**  The San Diego Superior Court maintains a Civil Mediation Panel of approved mediators who have met certain minimum qualifications and have agreed to charge $150 per hour for each of the first two (2) hours of mediation and their regular hourly rate thereafter in court-referred mediations.

On-line mediator search and selection:  Go to the court's ADR webpage at www.sdcourt.ca.gov/adr and click on the "Mediator Search" to review individual mediator profiles containing detailed information about each mediator including their dispute resolution training, relevant experience, ADR specialty, education and employment history, mediation style, and fees and to submit an on-line Mediator Selection Form (SDSC form #CIV-005).  The Civil Mediation Panel List, the Available Mediator List, individual Mediator Profiles, and Mediator Selection Form (CIV-005) can also be printed from the court's ADR webpage and are available at the Mediation Program Office or Civil Business Office at each court location.

**Settlement Conference:**  The judge may order your case to a mandatory settlement conference, or voluntary settlement conferences may be requested from the court if the parties certify that: (1) settlement negotiations between the parties have been pursued, demands and offers have been tendered in good faith, and resolution has failed; (2) a judicially supervised settlement conference presents a substantial opportunity for settlement; and (3) the case has developed to a point where all parties are legally and factually prepared to present the issues for settlement consideration and further discovery for settlement purposes is not required. Refer to SDSC Local Rule 2.2.1 for more information. To schedule a settlement conference, contact the department to which your case is assigned.

**Arbitration:**  The San Diego Superior Court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience.  Refer to SDSC Local Rules Division II, Chapter III and Code Civ. Proc. § 1141.10 et seq or contact the Arbitration Program Office at (619) 450-7300 for more information.

More information about court-connected ADR: Visit the court's ADR webpage at www.sdcourt.ca.gov/adr or contact the court's Mediation/Arbitration Office at (619) 450-7300.

**Dispute Resolution Programs Act (DRPA) funded ADR Programs:**  The following community dispute resolution programs are funded under DRPA (Bus. and Prof. Code §§ 465 et seq.):
- In Central, East, and South San Diego County, contact the National Conflict Resolution Center (NCRC) at www.ncrconline.com or (619) 238-2400.
- In North San Diego County, contact North County Lifeline, Inc. at www.nclifeline.org or (760) 726-4900.

**Private ADR:**  To find a private ADR program or neutral, search the Internet, your local telephone or business directory, or legal newspaper for dispute resolution, mediation, settlement, or arbitration services.

**Legal Representation and Advice**

To participate effectively in ADR, it is generally important to understand your legal rights and responsibilities and the likely outcomes if you went to trial. ADR neutrals are not allowed to represent or to give legal advice to the participants in the ADR process. If you do not already have an attorney, the California State Bar or your local County Bar Association can assist you in finding an attorney. Information about obtaining free and low cost legal assistance is also available on the California courts website at *www.courtinfo.ca.gov/selfhelp/lowcost*.

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF  SAN DIEGO | FOR COURT USE ONLY |
|---|---|
| STREET ADDRESS:        330 West Broadway<br>MAILING ADDRESS:     330 West Broadway<br>CITY, STATE, & ZIP CODE: San Diego, CA  92101-3827<br>BRANCH NAME:         Central | |

| PLAINTIFF(S):   Miranda Varoz |
|---|

| DEFENDANT(S): AllSaints USA Limited DBA AllSaints Spitafields USA Retail LTD |
|---|

| SHORT TITLE:    VAROZ VS ALLSAINTS USA LIMITED [E-FILE] |
|---|

| STIPULATION TO USE ALTERNATIVE<br>DISPUTE RESOLUTION (ADR) | CASE NUMBER:<br>37-2016-00032584-CU-MC-CTL |
|---|---|

Judge: Richard E. L. Strauss                                           Department: C-75

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution (ADR) process.  Selection of any of these options will not delay any case management timelines.

☐ Mediation (court-connected)            ☐ Non-binding private arbitration

☐ Mediation (private)                    ☐ Binding private arbitration

☐ Voluntary settlement conference (private)   ☐ Non-binding judicial arbitration (discovery until 15 days before trial)

☐ Neutral evaluation (private)           ☐ Non-binding judicial arbitration (discovery until 30 days before trial)

☐ Other (specify e.g., private mini-trial, private judge, etc.): _____

_____

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: (Name) _____

_____

_____

Alternate neutral (for court Civil Mediation Program and arbitration only): _____

Date: _____         Date: _____

_____                 _____
Name of Plaintiff                                Name of Defendant

_____                 _____
Signature                                        Signature

_____                 _____
Name of Plaintiff's Attorney                     Name of Defendant's Attorney

_____                 _____
Signature                                        Signature

If there are more parties and/or attorneys, please attach additional completed and fully executed sheets.

It is the duty of the parties to notify the court of any settlement pursuant to Cal. Rules of Court, rule 3.1385.  Upon notification of the settlement, the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court.

**IT IS SO ORDERED.**

Dated:  09/20/2016

_____
JUDGE OF THE SUPERIOR COURT

SDSC CIV-359 (Rev 12-10)              **STIPULATION TO USE OF ALTERNATIVE DISPUTE RESOLUTION**

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO** | |
| STREET ADDRESS: | 330 W Broadway |
| MAILING ADDRESS: | 330 W Broadway |
| CITY AND ZIP CODE: | San Diego, CA 92101-3827 |
| BRANCH NAME: | Central |
| TELEPHONE NUMBER: | (619) 450-7075 |

| |
|---|
| **PLAINTIFF(S) / PETITIONER(S):**   Miranda Varoz |
| **DEFENDANT(S) / RESPONDENT(S):**   AllSaints USA Limited |
| VAROZ VS ALLSAINTS USA LIMITED [E-FILE] |

| | |
|---|---|
| **NOTICE OF CASE ASSIGNMENT AND CASE MANAGEMENT CONFERENCE on MANDATORY eFILE CASE** | CASE NUMBER:<br>37-2016-00032584-CU-MC-CTL |

## CASE ASSIGNMENT

Judge:  Richard E. L. Strauss                         Department: C-75

**COMPLAINT/PETITION FILED:** 09/19/2016

| TYPE OF HEARING SCHEDULED | DATE | TIME | DEPT | JUDGE |
|---|---|---|---|---|
| Civil Case Management Conference | 04/28/2017 | 10:15 am | C-75 | Richard E. L. Strauss |

A case management statement must be completed by counsel for all parties or self-represented litigants and timely filed with the court at least 15 days prior to the initial case management conference. (San Diego Local Rules, Division II, CRC Rule 3.725).

All counsel of record or parties in pro per shall appear at the Case Management Conference, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of ADR* options.

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT), THE ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION FORM (SDSC FORM #CIV-730), A STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR) (SDSC FORM #CIV-359), AND OTHER DOCUMENTS AS SET OUT IN SDSC LOCAL RULE 2.1.5.

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

TIME STANDARDS: The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time.  General civil cases consist of all civil cases except: small claims proceedings, civil petitions, unlawful detainer proceedings, probate, guardianship, conservatorship, juvenile, parking citation appeals, and family law proceedings.

COMPLAINTS: Complaints and all other documents listed in SDSC Local Rule 2.1.5 must be served on all named defendants.

DEFENDANT'S APPEARANCE: Defendant must generally appear within 30 days of service of the complaint.  (Plaintiff may stipulate to no more than 15 day extension which must be in writing and filed with the Court.) (SDSC Local Rule 2.1.6)

JURY FEES:  In order to preserve the right to a jury trial, one party for each side demanding a jury trial shall pay an advance jury fee in the amount of one hundred fifty dollars ($150) on or before the date scheduled for the initial case management conference in the action.

MANDATORY eFILE: Case assigned to mandatory eFile program per CRC 3.400-3.403 and SDSC Rule 2.4.11. All documents must be eFiled at www.onelegal.com.  Refer to General Order 051414 at www.sdcourt.ca.gov for guidelines and procedures.

COURT REPORTERS: Court reporters are not provided by the Court in Civil cases. See Local Rule 5.1.8

*ALTERNATIVE DISPUTE RESOLUTION (ADR):  THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO TRIAL, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. PARTIES MAY FILE THE ATTACHED STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (SDSC FORM #CIV-359).

SDSC CIV-721 (Rev. 08-12)                                                                                           Page: 1

**NOTICE OF CASE ASSIGNMENT**

Exhibit A
Page 34

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Todd Carpenter, 234464<br>Carpenter Law Group<br>402 West Broadway, 29th Floor<br>San Diego, CA 92101<br>TELEPHONE NO.: (619) 756-6994<br>ATTORNEY FOR *(Name):* Plaintiff | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego<br>**09/27/2016** at 10:39:00 AM<br>Clerk of the Superior Court<br>By E- Filing,Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF

Superior Court of California, San Diego County
330 W. Broadway
San Diego, CA 92101-3409

| PLAINTIFF/PETITIONER: Miranda Varoz | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: ALLSAINTS USA LIMITED | 37-2016-00032584-CU-MC-CTL |

| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |
|---|---|

**BY FAX**

1. At the time of service I was a citizen of the United States, at least 18 years of age and not a party to this action.

2. I served copies of: Summons, Complaint, Civil Case Cover Sheet, Alternative Dispute Resolution Information, Notice of Case Assignment and CMC on Mandatory eFile Case, Stipulation to Use Alternative Dispute Resolution

3. a. Party served: ALLSAINTS USA LIMITED, a foreign business corporation doing business in California as ALLSAINTS SPITAFIELDS USA RETAIL LTD

   b. Person Served: William Kim, CEO - Person Authorized to Accept Service of Process

4. Address where the party was served: 750 N San Vicente BLVD, 1050 East
   West Hollywood, CA 90069

5. I served the party
   b. **by substituted service.** On (date): 09/23/2016   at (time): 3:56PM   I left the documents listed in item 2 with or in the presence of: Robbin Kim - Person In Charge Of Office
      (1) (business) a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.
      (4) A declaration of mailing is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   d. on behalf of:
   ALLSAINTS USA LIMITED, a foreign business corporation doing business in California as ALLSAINTS SPITAFIELDS USA RETAIL LTD
   under: CCP 416.10 (corporation)

7. **Person who served papers**
   a. Name:         Sarah Thompson
   b. Address:     One Legal - 194-Marin
                        504 Redwood Blvd #223
                        Novato, CA 94947
   c. Telephone number: 415-491-0606
   d. The fee for service was: $   111.90
   e. I am:
      (3) registered California process server.
         (i)   Employee or independent contractor.
         (ii)  Registration No. 6679
         (iii) County Los Angeles

8. I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Date: 09/26/2016

Sarah Thompson
(NAME OF PERSON WHO SERVED PAPERS)                                  (SIGNATURE)

Form Adopted for Mandatory Use
Judicial Council of California POS-010
[Rev. Jan 1, 2007]                              **PROOF OF SERVICE OF SUMMONS**                     Code of Civil Procedure, § 417.10

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and Address)*: | | TELEPHONE NO.: | FOR COURT USE ONLY |
|---|---|---|---|
| Todd Carpenter, 234464<br>Carpenter Law Group<br>402 West Broadway<br>San Diego, CA 92101<br>ATTORNEY FOR *(Name)*: Plaintiff | | **(619) 756-6994** | |
| | Ref. No. or File No. | | |
| Insert name of court, judicial district or branch court, if any:<br>Central<br>330 W. Broadway<br>San Diego, CA 92101-3409 | | | |

| PLAINTIFF:<br>Miranda Varoz |
|---|
| DEFENDANT:<br>ALLSAINTS USA LIMITED |

| **PROOF OF SERVICE BY MAIL** | | | | CASE NUMBER:<br>37-2016-00032584-CU-MC-CTL |
|---|---|---|---|---|

### BY FAX

I am a citizen of the United States, over the age of 18 and not a party to the within action. My business address is 504 Redwood Blvd., Suite 223 Novato, CA 94947.

On 09/26/2016, after substituted service under section CCP 415.20(a) or 415.20(b) or FRCP 4(e)(2)(B) or FRCP 4(h)(1)(B) was made (if applicable), I mailed copies of the:

Summons, Complaint, Civil Case Cover Sheet, Alternative Dispute Resolution Information, Notice of Case Assignment and CMC on Mandatory eFile Case, Stipulation to Use Alternative Dispute Resolution

to the person to be served at the place where the copies were left by placing a true copy thereof enclosed in a sealed envelope, with First Class postage thereon fully prepaid, in the United States Mail at Los Angeles, California, addressed as follows:

ALLSAINTS USA LIMITED, a foreign business corporation doing business in California as ALLSAINTS SPITAFIELDS USA RETAIL LTD

William Kim, CEO

750 N San Vicente BLVD, 1050 East

West Hollywood, CA 90069

I am readily familiar with the firm's practice for collection and processing of documents for mailing. Under that practice, it would be deposited within the United States Postal Service, on that same day, with postage thereon fully prepaid, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

Fee for Service: $ 111.90

One Legal - 194-Marin

504 Redwood Blvd #223

Novato, CA 94947

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct and that this declaration was executed on 09/26/2016 at Los Angeles, California.

Eldrin Masangkay